319 So.2d 170 (1975)
Gladys CLARK, Individually and As Executrix of the Estate of Cecil Woodrow Clark, Appellant,
v.
Charles Thomas ENGLISH and Brenda English, Husband and Wife, Appellees.
No. W-91.
District Court of Appeal of Florida, First District.
August 26, 1975.
Rehearing Denied October 20, 1975.
Barne J. Morain, and Robert L. Erwin, III, of Morain & Roddenberry, Pensacola, for appellant.
Calvin W. Wilson, Pensacola, for appellees.
WILLIS, BEN C., Associate Judge.
This case was previously before this Court in English, et ux v. Clark, et al, 1st DCA Fla.App. 1974, 289 So.2d 33, in which a final judgment, as supplemented, which dismissed with prejudice a complaint for specific performance of an agreement for the sale of real property, was reversed and remanded for further proceedings. Upon remand, the trial court conducted a further *171 hearing, took testimony, and rendered the judgment which is the subject of the instant appeal.
This case originated as a suit for specific performance brought by the purchasers against the sellers all of whom had been parties to a layman-drafted written agreement for the sale of certain real property, part of which belonged to Cecil Woodrow Clark, now deceased, individually, and part by Mr. Clark and his wife, Gladys Clark, as tenants by the entirety.
The entire contract is as follows:
" October 1st, 1969
We, C.W. Clark and Gladys Clark, have this day received $1,000.00 (One-Thousand-Dollars) as an official binder on the property now used as a Service Station located at 6605 North Davis Highway, Pensacola, Florida, front of the lot not to exceed 135 feet and the back of the lot not to exceed 55 feet.

 Total Price $25,000.00
 Binder 1,000.00
 Balance 24,000.00

Payments of $200.00 due on 1st of each month, beginning November 1st, 1969 and $8000.00 due in six months (April 1st 1970) at 5% (Five Percent) intrest (sic) on $24,000.00, intrest (sic) to be added every 6 Mo. (Six months) beginning October 1st, 1969.
 (signed) 
 C.W. Clark
 (signed) 
 Gladys Clark
We, Charles Thomas English and Brenda English, do agree to the above contract.
 (signed) 
 Charles Thomas English
 (signed) 
 Brenda English
 Lovey B. Messick (signed)
WITNESS
 Jack Messick (signed)
WITNESS
(Notary Seal of Jack Messick, with expiration date stated as August 16, 1970)"
The trial court initially found that the parties had entered into and intended to be bound by this contract, and that such contract was a contract for a deed but that it could not be specifically enforced because of a variation in views between the parties as to what was agreed upon. This Court, in the first appeal, made note of the above findings and rulings and further observed the factual circumstances to include the payment of the "binder payment", that valuable improvements had been made on the property by the Englishes, who also conducted their business there and made the required monthly payments until negotiations as to the form of conveyance broke down. It was also stated:
"The decedent and his attorney eventually agreed to the form of closing which appellants devised, but he died before the sale was consummated. There was no evidence that appellee Gladys Clark ever agreed to the arrangement which her husband had verbally agreed to. In fact, after her husband's death, appellee [Gladys Clark] desired to terminate the original agreement of sale." p. 35.
In reversing the dismissal of the complaint, this Court recognized that the decedent husband had agreed to a method of conveyance upon which the Englishes had also agreed, and that if his individually owned portion is ascertainable, specific performance could be granted as to that portion "with an appropriate reduction in the purchase price".
With regard to the "variation in views between them as to what was agreed upon", this Court ruled that the contract cleary provided "for the sale to appellants [Englishes] of the subject property", p. 35, and that the variation in views was not what was agreed upon but how the transaction was to be completed.
*172 A dispute had arisen as to the description of the property to be conveyed, but this Court ruled that any defenses on this issue had been waived as was evident from the pre-trial order appearing in the record. This court further recognized that the primary issue was whether or not the Englishes had complied with the original contract or have breached it so as not to be entitled to any specific enforcement. It was said: "We have been unable to find in this record any evidence, nor any findings by the trial court, relating to a breach of the contract by ... [Englishes]. Nor does such evidence appear in the resume of facts submitted by the trial court. In fact, if any breach of contract occurred at all, it appears to us that the breach lies on the part of ... [Gladys Clark] when she, as set forth in the resume of facts, `elected to terminate the agreement of October 1, 1969' after her husband's death. In short, there is no evidence in the record before this Court as to whether ... [Englishes] breached the original contract, without waiver by ... [Gladys Clark], so as to justify a rescission of said contract". p. 35.
The case was remanded "for the further taking of testimony on the issues mentioned in this opinion". p. 36.
The Clarks were the owners of property which was located at an intersection of a public street and a highway. On the corner was located a grocery store which the Clarks operated. The subject property is a parcel, on which was located a service station building which lies north of the grocery store area. On the west of the grocery store area was a building leased to a rental business being conducted there. The contract deals with the portion on which the service station was situate. After signing the contract, the $1000 was paid, the Englishes went into possession and thereafter made eleven monthly payments. None of the parties were represented by attorneys until sometime prior to April 1970 when the Englishes employed counsel to look into the matter and advise as to closing out the transaction. The transaction was complicated by the fact that the lease intended for the rental business erroneously described the subject property, and the entire area including the service station, grocery store, and rental business was subject to a blanket mortgage. Furthermore, the lease was pledged to secure a bank loan. The attorney for the Englishes conferred with Mr. Clark with the view of correcting the lease description and thus clearing the subject property and also obtaining a release of subject property from the blanket mortgage. Apparently the mechanics were worked out with Mr. Clark, but before they could be implemented he died. Subsequently, negotiations continued with Mrs. Clark but ultimately they broke down with Mrs. Clark contending the contract was terminated by failure of the Englishes to pay the $8000 payment due April 1, 1970 and the monthly installments subsequent to September 1970. The Englishes contended they were ready, able and willing to pay what was obligated but Mrs. Clark refused to accept same. Thus, the suit for specific performance was instituted with the results above mentioned.
On the trial after remand it was shown that the mortgage is now paid off and the lease error has been corrected. It further appears that it is impractical to consider separately the property which Mr. Clark owned individually from that which had been held by the entireties as the line would go through a building on the property. Also, since Mrs. Clark now owns the property which had been held by the entireties prior to Mr. Clark's death and she is the executrix of his estate, all interests are before the Court.
It is well to observe here that the law of the case has been settled by the prior opinion and judgment of this Court, except as to the issues remanded for further consideration. The judgment of the trial *173 court under review here recited that "the contract dated October 1, 1969, together with the later acts of the parties, constitutes a valid and binding contract for deed of real estate specifically enforceable by this action." It also found that there is presently due (as of May 10, 1974, the date of the judgment) monthly payments of $200.00 each beginning October 1, 1970 to and including May 1, 1974 and also the $8000.00 payment due April 1, 1970, all with interest as provided by the contract. Dealing with the issue of whether or not there had been a breach by the Englishes, the following was stated:
"... the attempt of Gladys Clark to terminate the agreement was of no legal effect. While, the Englishes, upon advise (sic) of their attorney, made no payments after September 1, 1970, negotiations actively continued between the parties relating to the method of closing the transaction. Not until after a tender of $8,967.10 on February 1, 1971 did Mrs. Clark give notice to the plaintiffs she no longer considered herself bound. If there was a technical breach by the Englishes, such was waived by continuing negotiations. The conduct of Mrs. Clark constitutes the breach for which defendants are held accountable. In such a posture, the negotiations having been terminated by Mrs. Clark and she having renounced the contract, it therefore was unnecessary for a futile tender to be made by the plaintiffs. The law does not require a useless act."
It appears that the trial court correctly proceeded to resolve the issues remaining to be decided after this Court had rendered its judgment and remanded the case for further proceedings. Though the evidence was conflicting in many particulars and different inferences might have been drawn from the evidence by reasonable men, we deem that there is competent substantial evidence to sustain the findings of fact of the trial court and to support the application of legal conclusions expressed. The Court was not dealing with the enforcement of a new contract but only on the details of how the transaction was to be completed within the terms of the agreements embodied in the contract of the parties. The issue was principally whether or not the Englishes had breached the agreement and thus would be precluded from specific performance of the contract. This was decided and no error is found in the decision.
The trial court retained jurisdiction for the entry of further orders as may be necessary or appropriate including taxation of costs. Thus, there is the power in the trial court to render such supplemental judgment as may be necessary to give effect to the adjudications made and hereby affirmed.
Affirmed.
McCORD, J., concurs and SPEAR, MERCER P., Associate Judge, dissents.
SPEAR, MERCER P., Associate Judge (dissents).
I would reverse. The buyers failed to comply with the terms of the original contract, and therefore are not entitled to specific performance.